We next have Farmer v. Kansas State University and Weckhorst v. Kansas State University. Case numbers are 17-3207 and 17-3208. Counsel, you may proceed. Good morning, Your Honors. Derek Teeter for the appellant, Kansas State University. Title IX prohibits institutional sex discrimination by colleges and universities as a condition to their receipt of federal funds. It does not directly apply to the conduct of third parties. Under the Supreme Court's holding in Davis, institutions are not vicariously liable for sexual assaults perpetrated by students against other students. Nor, under Davis, do institutions have an affirmative duty to remedy the effects of criminal sexual assaults they did not know about at the time and that they did not cause. Instead, under the narrow implied cause of action that Davis recognizes, institutional liability for money damages results only where the institution has actual notice of severe and pervasive harassment. It responds in a clearly unreasonable, or we might say deliberately indifferent manner, and as a result, it subjects its students to sexual harassment. Contrary to that teaching, the district court below held that these plaintiffs could proceed based on a claim that case states and then subjects the students to subsequent sexual harassment. The actual language in Davis is that it makes them liable or vulnerable to further harassment. So it doesn't say, I mean, I think your quote was a little inaccurate to say, and then it subjects them to further harassment. That's not the correct reading. Judge Abell, there's actually two key sentences. If a funding recipient does not engage in harassment directly, it may not be liable for damages unless its deliberate indifference subjects its students to harassment. Then the court goes on to define the term subjects. That is, the deliberate indifference must, at a minimum, cause students to undergo harassment or make them liable or vulnerable to it. Right, right. To it, referring to harassment. Right. Vulnerable to it. Yeah. And then the court goes on to say, moreover, because the harassment must occur under the operations of the funding recipient, the harassment must take place in the context subject to the school's control. The court speaks to actual harassment, not the hypothetical vulnerability to it. I think a flaw in the district court's reasoning, and it was a flaw advocated by the plaintiffs, was that that clause, liable or vulnerable to, ought to be plucked out of the opinion and read in isolation. And one of the things that Judge Kelly beat into me when I was a law clerk on this court is that you don't determine the holdings of cases by snipping out clauses. You have to understand the claim that was presented to the court and the facts that were before it. And in Davis, the plaintiff, LaShonda, alleged that she was subject to a repeated pattern of harassment, that it was reported to school officials, that they did nothing about it, and thereafter she was harassed again. Not hypothetical harassment, but actual harassment in the form of unwelcome groping and verbal overtures for sex. Davis did not hold that the mere vulnerability to harassment itself is a sufficient injury by itself to sustain a Title IX claim for money damages. That's what this court held in Eskew. That's what this court held in Roast. It's what a majority of the other circuit courts have held. I think the Noble case, affirmed by the Sixth Circuit, does a particularly good job of illustrating why this exercise in cutting and pasting that clause doesn't make much sense, because that wasn't the claim before the court in Davis. Excuse me. Go ahead. Go ahead. Okay. So what meaning, then, do you give vulnerable to it? I mean, I guess, are you reading it as further harassment, or, I mean, how are you reading that clause, or how do you think we should? Well, it refers to sexual harassment, and whether or not it's further harassment depends on the type of case that's been brought. So Judge Robinson below recognized that you can have, in essence, two different types of deliberate indifference liability, a so-called pre-assault deliberate indifference, where the school is alleged to have had actual knowledge that a particular perpetrator is a risk to students, that it fails to act, and as a result, the plaintiff is assaulted. Or you can have a post-assault, post-report case, where the plaintiff alleges deliberate indifference to her report alone. If you're proceeding on that post-report theory, then by definition, there needs to be a subsequent act of harassment. Otherwise, the school's conduct is not subjecting the plaintiff to harassment, and we would instead be reverting to that form of vicarious liability that Davis specifically rejected. There is a textual argument that the plaintiffs have made about this particular sentence. I would start by saying interpreting Supreme Court opinions is not the same as interpreting statutes. Counsel, before you get to that, could I just ask you about a couple of questions about the Davis case? Of course. I guess the first thing I'm interested in is this. And there's no mention there about further harassment or vulnerable to it. In fact, the causation aspect of the case she does address is in the last sentence. They say, Isn't that really the injury that we're looking at here is diminished access to the educational benefits at KSU? Only to the extent that that injury is the result of K-State's own conduct, Your Honor. Well, is that even at issue on this appeal? Hasn't that already been determined? No, Your Honor, it hasn't. But you're not arguing lack of deliberate indifference, are you? Well, you're not challenging. All right. You're not challenging. That's not on the table right now. Your Honor, we're not arguing our response was not clearly unreasonable. We have argued and briefed below. Well, I understand that. But in terms of the issue you're presenting to us, don't we have to assume there was deliberate indifference? You have to assume that the response was clearly unreasonable. Yes. All right. Deliberate indifference. And then isn't the critical question whether that deliberate indifference diminished access to educational opportunity? No, Your Honor. Davis says that that deliberate indifference must subject students to harassment. Well, I don't see that in Justice O'Connor's summary of her opinion. It says that it has to bar the victim's access to an educational opportunity. But, Your Honor, that clause is specifically contained in Davis. I read it to Judge Abell in the prior exchange. It's at 645 of the opinion. But that clause is ambiguous. It could be read the way you read it or the way I suggested. And I think what is now being suggested to you is that the summary might help us clarify. It may. But I would point the Court to one other really important piece of this opinion, I think. And that is the part that begins at page 652 to 653, where Justice O'Connor addresses the notion that liability can arise from a single incident of sexual harassment, no matter how severe. And specifically concludes that she does not believe that was within the scope of liability that Congress could have envisioned when it passed Title IX. So if the theory of liability we're positing is that a student-on-student sexual assault results in liability, unless the school affirmatively remediates the effects of that assault, we've got a form of liability premised on a single incident, which Davis says you can't have, which the Eighth Circuit, it doesn't absolutely say you can't have. Well, Your Honor, I think it does. In the immediately preceding sentence, the Court says that the Petitioner's ability to state a cognizable claim depends equally on the alleged persistence and severity of the actions. This is why the Eighth Circuit in Culver-Stockton and the Fifth Circuit in Carmichael both held that you can't have liability arising from a single incident. You know, I mean, to argue that there's a – everybody's entitled to tolerate one rape or one sexual assault, the case law is – people are just opposing that. But when you look at the two cases that you cited from the Tenth Circuit, Eskew and Roost, those are both summary judgment matters, where the Court went to trial – I mean, went to evidence on summary judgment. And in both cases, the Court concluded that the school fixed the problem. In Eskew, they fired – reprimanded and fired the teacher and instructed the teacher, have no more impact. In Roost, they determined that the student had transferred to a different school and was no longer going to be vulnerable. And the problem that I see in this case is the argument that the school did not do anything to remedy the event. In fact, they may have exacerbated it by revealing details about the victim. But they never went to the perpetrators and expelled them or said, you're under – we're watching you, or do anything to make the students feel safe enough to continue to enjoy the educational opportunities. So the problem isn't a criminal remedy. The problem is whether the school is fulfilling its duty to make the environment tolerable and acceptable for educational opportunities. I would say a couple of things in response, Judge Bell. But the question in this case is much more narrow than whether the school has created a safe environment in a general sense. We're talking about the implied cause of action for money damages under Title IX, not the scope of the Department of Education's regulatory enforcement authority, not whether the school can be liable under some other cause of action, but whether this piece of spending clause legislation creates monetary damages for the school. I would also answer you, Judge Bell, the notion that K-State did nothing – Are you saying that there is no – there's a general principle that Title IX does not give rise to monetary damages? Your Honor, in Gebser, the Court noted that Congress did not create any express cause of action. I know they didn't. I know they didn't, but – And so the Court – There's case law that has allowed that, is there not? Oh, of course. I mean, that's – So you're asking us to revisit all that case law? Not at all, Your Honor. I'm saying the case law is narrow, and the cause of action that was recognized in Davis was narrow. It does not create monetary liability under some sort of vicarious or respondeat superior theory. And here the theory as posited is, there was a sexual assault that, at this point, the plaintiffs are not contending K-State is liable for. They dropped the pre-assault theory of liability. So we have a sexual assault that causes the plaintiffs to fear further encounters with the perpetrators. They then extrapolate that fear of encounter to say we had vulnerability to harassment, and therefore you're liable because you didn't remedy what makes us feel vulnerable. They're going further than that. I mean, that might itself be sufficient, but they are going further in saying you're also liable because, at least as to the second of these plaintiffs, that you have revealed information about me that has made me more vulnerable. Two things, Your Honor. That's not sexual harassment, nor is that sex discrimination, to notify someone that they've been accused of sexual assault. This Court defines sexual harassment in Siemens, in your opinion, as unwelcome conduct of a sexual nature or adverse conduct that is motivated by a person's gender. If it's sexual harassment to notify a male student they're accused of rape, then every school is committing sexual harassment. The argument isn't that that was sexual harassment. The argument was that that contributed to an unsafe environment educationally. And my point is that under Davis, schools aren't liable for creating an unsafe environment in the broad sense. They're liable for intentionally engaging in sex discrimination. Deliberate indifference. Where that deliberate indifference subjects students to harassment. Well, you said intentionally. The standard's deliberate indifference, isn't it? Well, in Davis, the Court says that when an institution is deliberately indifferent to known harassment, that is a form of intentional sex discrimination. All right. Let me ask you something else. You mentioned the plaintiff's feelings, and I think the argument is that the more liable or vulnerable the harassment standard concerns some kind of subjective feeling on the part of the plaintiffs. But is that really the case? Why isn't it an objective standard? Well, it could be. Excuse me. I haven't finished the question. Why isn't that an objective standard as to whether the plaintiff's vulnerability to sexual harassment has been increased? And I apologize for interrupting you, Judge Madison. To the extent that the Court recognizes that as a sufficient injury, I agree that it could be. In fact, it must be an objective inquiry. Here, there are no facts alleged that, even if reasonable inference are taken, would suggest the plaintiffs were actually more vulnerable to sexual harassment. They have alleged that they felt a fear of further encounters. But there are no facts alleged, for example, that the perpetrators threatened them, came up to them again. In fact, there was no interaction between the perpetrators and these plaintiffs at all post-report to case date. Therefore, there could not be any further harassment. And this case then boils down to an attempt to make case date liable because it didn't remedy the emotional effects that flowed from the sexual assault. But these plaintiffs testified that, in fact, they did continue to feel the impact, and it did impact their educational ability. They testified that they dropped out of school activities. They didn't take classes. They altered their routes and walking. They felt fear on the community. I mean, there was explicit testimony that they, consequentially, were encountering impediments to their educational opportunity. Judge Mattis, if I may respond, my time is up. Please do. Judge Abell, there was no testimony. We're at the 12 v. 6 stage, so there's only allegations. I know, but I'm talking about what the allegations were. I'm sorry. Respectfully, Your Honor, and I would direct the Court to, for example, Ms. Farmer's complaint, paragraph 37, Ms. Weckhorst's complaint, paragraph 29. The sexual violence committed by a K-State student against Tessa placed her at risk and in constant fear of encountering the student assailant on campus. Not that K-State created the fear. The sexual violence created the fear, and now we're trying to hold K-State liable because it didn't come in and expel the students and alleviate that fear. This is where we run into the conflict with Davis, saying that schools don't have an obligation to remedy sexual harassment they don't cause. The rule is not one where every accused respondent has to be expelled. How far do you carry that? Just for legal understanding here, is there ever a pattern of sexual harassment of a certain category of students that could rise so great that the university would have an obligation to remedy that? Or is your position they could say, well, until it happens again, we're not going to do anything? Your Honor, if it's a persistent, so there's sort of a sequential, multiple acts of sexual harassment. Well, at least one of the women was sexually harassed or raped. Correct, but K-State only learned of them at the same time. There was no post-actual knowledge harassment. And I guess in answer to your question, the cases where institutions have been found liable, or at least where claims have been allowed to proceed, like Davis itself, are ones where there was harassment, actual knowledge to the school, and then a continuation of harassment. So your answer to my question is, no, the university would not, there isn't anything, if it all happened at occasion, on one occasion or one group of occasions, the university is not liable unless it happens again. If we're talking about a post-report deliberate indifference theory, if it's a pre-assault theory, like in Williams, where the allegation was, you're aware this male student is a rapist, is a predator, and you've done nothing, and then he assaults someone, that might result in liability from a single sexual assault. That theory has been abandoned here. Are there no further questions? Thank you, counsel. Good morning, your honors. May it please the court. John Fazola on behalf of Appelli, Sarah Weckhorst, and Tessa Farmer, both who are here with us today. This case is about a university searching for a legal excuse to justify its refusal to take a single meaningful action in response to reports of brutal rapes at fraternities within its university. To get there, K-State is advocating that this court adopt a rule that runs directly counter to the express language of Davis, and is actually irreconcilable with it. Perhaps nothing that aligns them more than the fact that in attempting to explain what liable or vulnerable means, K-State renders the first part of the operative clause, cause to undergo harassment, plainly irreconcilable with the circumstance that the rule of liability for student-on-student harassment in which it can arise is meant to apply. Davis tells us that the rule they were announcing only applied in situations in which a funding recipient does not engage in harassment directly. K-State in its brief has explained that no, there's no redundancy between cause to undergo and make liable and vulnerable to, because cause to undergo implies direct action on behalf of the funding recipient in directing the harassment. Essentially, they're turning the Davis standard into a two-pronged standard of institution-on-student harassment, cause to undergo on the one hand, and then student-on-student that imports inaction plus subsequent further harassment. That just doesn't square with the plain language of Davis, which Davis drew from the plain language of Title IX. They were interpreting subjected to in Title IX. It just doesn't fit. Essentially, the other thing K-State is doing in making that argument is attempting to elevate the dissent in Davis to the law of the land. That's why they're using the term remediate. Appellees here are not asking K-State to remediate subjective or objective effects of sexual harassment. They're asking K-State not to be deliberately indifferent to the rapes that they experienced. That is where the source of the liability comes from. That's what Davis tells us. Instead, K-State continually, in their briefs, recasts the nature of our allegations to say, we're merely asking them to remediate the effects of sexual harassment, and that's not at all what's at issue here. The other thing that K-State would ask this court to adopt is a principle that it's not objectively harmful for a rape victim to, every day, leave her dorm and know that around any corner, in any elevator, at any part of campus, she can run into the man who raped her. Knowing at the same time that the university she attends and that rapist attends has said, we will do nothing about that fear and any impact it has on your ability to access your education, because it's nothing but subjective feelings on your part. We have no duties to remediate those subjective effects. The idea that Ms. Farmer and Ms. Weckhorst's fear was not basis in reality is a cynical view of reality. It pervaded their reality. It was, every day, the risk they faced when they stepped out of their house, when they decided to go to class, and they had to make a choice. Is today the day I decide to go to class and risk running into my rapist? Or is today the day I decide to stay home and take some self-protective measures? And we've seen other courts announce, and this court in Roast indicated in DICTA, if there is severe and pervasive harassment and it's affecting access to education and the school knows about it and is deliberately indifferent to it and still fails to provide a safe educational environment, liability can spring from there. Counsel, you mentioned Roast. I'd like to ask you to address Eskew and Roast, and in particular the passage in, I'll read it from Eskew. I think there was a similar one in Roast where this court said, and I'm quoting, significantly we note that Ms. Eskew does not allege that further sexual harassment occurred as a result of NOC's deliberate indifference. Could you explain why that doesn't pose a problem for your case? So in Eskew, the court was doing that analysis in the summary judgment stage, as I believe Your Honor pointed out earlier, not in reference to Eskew, but in reference to other cases. And why that's important is the court had already decided, look, it was a case of a professor touching a student inappropriately. There was a sternum adjustment. There was sexual comment. The university undertook an immediate investigation. They removed the student from the environment. They said she could, that the teacher wasn't going to teach any classes after that semester. They told the student she was taking two classes as a professor. She could transfer out of one class with him into another one, and then take a class grade, her current grade in that class. No further contact, right? So in that case, the court went through the deliberately indifference analysis and said, clearly, we can't say this response was clearly unreasonable. The university wins on deliberate indifference. Then they took the next step in the evaluation and looked to cases like Vance v. Spencer and said, okay, even in cases where the initial response isn't deliberately indifferent, new liability can arise if the school receives notice that, wait, the remedial response that we undertook wasn't totally effective. There's further harassment going on. And the court referencing Vance recognized that new liability could arise in those circumstances. New liability presupposes original liability. So if it were true that the university had no obligation to respond in the first instance until there was subsequent harassment, language in Vance and referenced in Eskew regarding new liabilities wouldn't make sense. In order to have new liability, you have to have original liability. And in Eskew, the court was going through the analysis, no deliberate indifference. Okay, let's see if, notwithstanding the original not deliberately indifference response, there was subsequent harassment which would have given rise to new obligation to respond. Do you find any significance, though, in the absence of the language from Davis, the liable or vulnerable to it in the passage that I read to you? Not in Eskew because we weren't dealing with a case where a student was forced to, on a daily basis, make a choice between accessing her education and being subjected to the potential of further harassment or seeing their perpetrator again. And so the access to education equation was off the table. And in Davis, the court, in interpreting, and I'm glad you asked this question, in interpreting what does this subject to in this operative phrase mean in Title IX, the court said we have to look to what else Title IX prohibits, and that gives us the necessary content for interpreting this phrase. And the Supreme Court said the principle that, excuse me, that the statute makes clear that whatever else it prohibits, students must not be denied access to educational benefits and opportunities on the basis of gender. And so the court was recognizing any definition we ascribe to subject to harassment has to take account of that because Title IX is geared to ensuring access to education and no deprivation of access on the basis of gender. I need to ask you about another passage, and this one is from Davis, and Mr. Teeter mentioned it in his argument. And that is where the court said in its opinion, and again I'm quoting, although in theory a single instance of sufficiently severe one-on-one peer harassment could be said to have such effect, referencing denial of access to the educational program, we think it unlikely Congress would have thought such behavior sufficient to rise to this level. I think the argument is that this passage creates problems for your case. Could you address that? So the passage, it doesn't affirmatively disclose the possibility that a sufficiently severe and objectively offensive incident of harassment could give rise to further liability on the one hand. I think as one of your honors recognized earlier, we think that's important. The other issue that's important is it still has to be viewed in the context of access to education and whether the discrimination at issue is impacting that. I think a good example of that is the Noble case, that Kay State likes to refer to. In that case, we had a special ed student, two special ed students in a classroom. One of the boys rubbed the female student suggestively from behind. There may have been some penetration. The school immediately suspended that student, conducted an investigation, stole blocks of hallway, took down pictures from a collage, changed his assignments, on and on. The perpetrator never returned to school. Not our case, right? In that case, the court said what the plaintiff was complaining of in the further discrimination context and vulnerable and liable to context was sexual harassment in the abstract. That's because there was no perpetrator in the school anymore. The subjective risk of being subjected to further harassment just didn't exist anymore because the school was not deliberately indifferent. As the school noted in that case, it's not an instance in which school administrators investigated and did nothing. Further, I want to get back to Davis a little bit. It correctly settled the law. The phrase, cause to undergo or make liable or vulnerable to, as I said, the way case data is interpreted is just irreconcilable with the entire context of student-on-student harassment that we're talking about. It imputes direct action in the first instance to the institution, which is not the scenario. That would be institution-on-student harassment. It also would make liable or vulnerable to redundant because if liable or vulnerable to means the university actually caused the student to undergo harassment, why does it even exist in the opinion? Because to cause or undergo harassment already contains an element of causation, and so it would be plain redundancy for the Supreme Court to add that, and we don't think they meant to do that. There was also a reference to the one free rape rule, and I want to revisit this because K-State said we pejoratively raised it in our brief. We were raising it based on an opinion in another court, but I want to point out that K-State's position today would not effectively continent a one free rape rule. It could, if applied the way they want you to, continent a two free rape rule in terms of institutional liability. So we don't think the facts in our case are egregious enough, and we do, but take it down to grade levels. We have a fourth grade student who's raped by a sixth grade student. They ride the bus together, they live in a rural area, they're forced to attend school every day, and the little girl sees the boy every day in school. The school says your subjective fear of being harassed by your perpetrator has no basis in reality, particularly because your parents already reported it to the police, and what rational sixth grader who would rape a fourth grader would be a repeat offender, right? The school could remain deliberately indifferent, let them ride on the bus together, let them be in class together, and then the student could rape the little girl again, and the school could argue, well, our initial response of inaction was not deliberately indifferent because as K-State says, it is unreasonable for a rape victim to believe that someone under investigation for rape will rape them again. So in that scenario, they're asking you to fashion a rule that would lead to, in certain circumstances, that result, and we think that result is outrageous. We think that result would shock any reasonable person or parent in this country, and we think it just can't be right. It can't be right. And this also goes to the standing argument that K-State has made, and again, they contort it as saying what we're alleging is a failure to remediate subjective feelings of harm and fear. Appellees are not alleging that. What they're alleging is there's a violation of Title IX because you were deliberately indifferent to our reports of rape, and that's objected and made us liable and vulnerable to further harassment. Again, it's a straw man argument. But I do want to point out that the primary case they rely on, Clapper, notes that the court there was applying an especially rigorous inquiry because it was analyzing well whether one branch of the federal government's action was unconstitutional. But another point to make there is the injury we're complaining of, the deliberate indifference, that means Ms. Farmer and Ms. Weckhorst had on a daily basis to decide whether to access their education or potentially confront their rapists on campus who were strangers, by the way, they didn't know and couldn't track down easily in terms of identifying them, would mean that in any case in which someone is raped, the idea that they would be raped again is just not subjectively reasonable. And they're asking for that inference in our case where a report is made to the police. And that just doesn't square with legal frameworks in states across this country. For example, Kansas has ordered protection for sexual assault, and you can go into court and get an order of protection for sexual assault, you can get an initial one based on a verified petition, and then you can have a hearing and based on preponderance of evidence get it extended, and the relevant inquiry by the court is, were you raped? And if you were raped, we'll give you an order of protection for further sexual assault from this same individual. So courts recognize that this isn't some subjective feelings and subjective harm, it's actually one that, you know, we want to protect against, and we want to take measures to keep people safe. The final argument I want to make, and I know I'm running short on time, is that if you take K-State's argument at its word that a report to the police reduced the risk of harm to appellees, because it was unlikely that they would be raped again because the offenders knew they were under investigation, then it would also be true, and the reasonable inference we get on our complaint is that if K-State had undertaken an investigation, it also would have further reduced the harm of potential future harassment by these individuals, because for the same reasons that it would be, under their telling, unlikely for someone who's under investigation for rape to go out and rape that same person again, it logically follows that if a student at a university is told by his university, hey, we're investigating you for rape, that that person would be less likely to go and rape that same person again. So under their own telling, their failure to do that was deliberately indifferent, and instead of reducing the risk of harm, which they could have done, left it at this level, thus making our clients more vulnerable to harassment than they would have been had K-State acted reasonably. And for those reasons that we mentioned in our brief, we think the district court had it right, we think the district court is in line with most of the federal circuit courts, in line with all the courts that have directly addressed this issue, and as we pointed in our brief, most of the cases they rely on to say there's some circuit court precedent going in their favor, the facts just don't back it up. And I noticed I was given a little more time, so I want to talk about some of those, because I think it's important, if Your Honors would indulge me. Well, I think you're at the end of your time. Am I beyond my time? In fact, we're pretty close, aren't we? I think they've had about equal time. Well, I appreciate the time, and I'm sorry for going over. Well, no, we've had both of you go over about the same amount, so I think we're going to conclude it there unless my colleagues have any other questions. Thank you. Thank you very much. Thanks to both of you. We appreciate your arguments. The case will be submitted, and counsel are excused.